IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSE STOVER,<br><br>            *Plaintiff,*<br><br>v.<br><br>NAUTILUS INSURANCE COMPANY,<br><br>            *Defendant.* | Civil Action No. 2:25-cv-30<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Jesse Stover ("Stover"), who suffered injuries on October 21, 2020, brought an initial action (the "Underlying Complaint") on June 9, 2022, against Tree-Scapes Company ("Tree-Scapes") and Robert W. Rexrode ("Rexrode") in the Court of Common Pleas of Westmoreland County, Pennsylvania at Docket No. 4373 of 2020 seeking damages for negligence and negligent hiring/retention/selection. (ECF No. 7-3). Rexrode then initiated this action on December 13, 2024, by filing a complaint (the "Coverage Complaint") against Nautilus Insurance Company ("Nautilus") in the Court of Common Pleas of Westmoreland County, Pennsylvania at Docket No. 4102 of 2024 asserting the following claims: Count I – Declaratory Judgment; Count II – Breach of Contract; and Count III – Bad Faith. (ECF No. 1-4). Nautilus removed the case to federal court on January 7, 2025. (ECF No. 1). Stover replaced Rexrode as Plaintiff in this action (ECF No. 6),[1] and Nautilus filed a motion to dismiss the Coverage Complaint. (ECF No.

---

[1] On November 15, 2024, Stover and Rexrode entered into a Settlement Agreement where Rexrode agreed to a judgment of limited recourse of $1,000,000.00 in Stover's favor, in which Stover would only be permitted to seek recovery of the judgment from Nautilus pursuant to the policy. (ECF No. 10, p. 2). Further, Rexrode assigned all of his rights and interests to Stover

1

7). For the following reasons, the motion will be granted. Counts I and II, the only counts remaining, will be dismissed with prejudice.

## I. FACTUAL BACKGROUND

On or about October 21, 2020, Stover was assisting Rexrode in cutting a tree at an apartment complex located at the corner of Carousel Drive and Manor Drive in Delmont, Westmoreland County, Pennsylvania.[2] (ECF No. 1-4, ¶ 6). Stover stipulates to the fact that he was not hired, employed, nor compensated in any matter at any time for his assistance in this "tree removal project." (*Id.* ¶ 8). While he was assisting with this project and placing a strap on Rexrode's boom truck, one of Rexrode's employees/agents sawed a tree branch from above causing it to fall directly onto Stover. (*Id.* ¶ 9). Stover sustained a series of injuries including, but not limited to, multiple left arm fractures, a muscle rupture, loss of consciousness at the time, concentrated paralysis in two fingers, bruises, nerve damage, and resulting emotional distress. (*Id.*); (ECF No. 7-3, ¶¶ 11-12). Stover required surgery as a result of his injuries. (*Id.*)

At the time of the incident, Rexrode was insured by a Nautilus commercial general liability policy, policy number NN1043912 ("the policy"). (ECF No. 1-4, ¶ 7). Stover asserts that Nautilus, as Rexrode's insurer, is obligated contractually, via its policy, to compensate him for his injuries, and that Nautilus' denial of coverage was improper. (ECF No. 9, ¶¶ 1-2). Nautilus asserts that it had and has no duty to defend or indemnify Rexrode and, ultimately, Stover, for his claims and damages. (ECF No. 7-1, p. 4). Nautilus further argues that the L205

---

under the policy, and the Settlement Agreement was approved on December 13, 2024. (*Id.* at 2-3). Then on January 28, 2025, Nautilus filed a Joint Stipulation, providing that Stover would be substituted for Rexrode in the action and that Nautilus, Rexrode, and Stover agreed to dismiss Count III of the Coverage Complaint without prejudice. (ECF No. 7-1, p. 8). The Court granted this Joint Stipulation on January 28, 2025. (ECF No. 6).

[2] Rexrode does business as Tree-Scapes, a Pennsylvania corporation with a registered office address in Monroeville, Allegheny County, Pennsylvania. (ECF No. 7-3, ¶¶ 2-3).

Endorsement exclusion for the policy bars coverage for "bodily injury" to an enumerated list of persons, which includes a "volunteer worker," and that Stover was acting as such a volunteer worker. (*Id.* at 5).

## II.    STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not

entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.  ANALYSIS

**A. Count I will be dismissed because the incident involving Stover falls squarely within the policy's L205 Endorsement, precluding coverage.**

Count I states a claim for declaratory relief, seeking a declaration that Nautilus has a duty to defend and indemnify Rexrode in the underlying action. It specifically states that under the policy, "Defendant had 'the right and duty to defend the insured against any suit seeking those damages.'" (ECF No. 1-4, ¶ 15); (*Id.* at 36). It also states that in the underlying personal injury action, Stover alleged a cause of action that fell squarely within the ambit of bodily injury liability coverage of the policy, and that Nautilus breached its duty by failing to defend Rexrode. (*Id.* ¶¶ 18, 19). This claim is dependent on a finding that Nautilus had a contractual obligation to defend and/or indemnify Rexrode. The Underlying Complaint and the policy at issue are attached to the Coverage Complaint, thus, the Court may consider these two documents to determine whether the underlying allegations give rise to any duty to defend as a matter of law.[3] (ECF Nos. 7-3 and 7-4).

Under Pennsylvania law, "the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Gardner v. State*

---

[3] Generally, "a district court ruling on a motion to dismiss [under Rule 12(b)(6)] may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). However, there are a few exceptions to that general rule. A district court may consider the following: (1) exhibits attached to the complaint, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); (2) documents that are "integral to or explicitly relied upon in the complaint," *Burlington*, 114 F.3d at 1426 (citation omitted), including, for example, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Benefit*, 998 F.2d at 1196; and (3) matters of public record, *Pension Benefit*, 998 F.2d at 1196.

*Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (quoting *Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (2004)).[4] Pennsylvania requires its courts to examine the applicable provisions of the insurance policy to ascertain the intent of the parties and determine coverage. *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019) (*citing* 401 Fourth St., Inc. v. Inv'rs Ins., 879 A.2d 166, 171 (Pa. 1999)). "[W]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language." *Id.* at 137 (citing *401 Fourth St., Inc.*, 879 A.2d at 171) (internal quotation marks omitted). When the language is ambiguous, however, courts must construe it "in favor of the insured and against the insurer, the drafter of the agreement." *Prudential Prop. & Cas. Ins. v. Sartno*, 903 A.2d 1170, 1177 (Pa. 2006) (citation omitted). Words or provisions are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (citing *Madison Constr. Co. v. Harleysville Mut. Ins.*, 735 A.2d 100, 106 (Pa. 1999)). "A word is not ambiguous, however, simply because it is undefined." *Greenwood Racing Inc. v. Am. Guar. & Liab. Ins.*, No. 21-1682, 2022 WL 4133295, at *3 (E.D. Pa. Sept. 12, 2022) (citing *Gemini Ins. v. Meyer Jabara Hotels LLC*, 231 A.3d 839, 849 (Pa. Super. 2020)).

The issue is whether Nautilus breached the terms of the policy when it determined that it had no contractual obligation to defend and/or indemnify Rexrode. Nautilus argues that the declaratory judgment claim is without merit because the L205 Endorsement precludes a finding that it had a contractual obligation to defend or indemnify Rexrode. Stover argues that the L205 Endorsement does not apply, requiring the Court to declare that this action falls within the ambit of the policy's coverage and that Nautilus had a duty to defend and indemnify its insured.

---

[4] This case was initially filed in Pennsylvania state court and was subsequently removed to this Court. The parties do not dispute that Pennsylvania law applies.

It is well-established Pennsylvania law that a determination as to an insurer's duty to defend (if any) is limited to the four corners of the underlying complaint against the insured, as compared to the terms of the insurance policy at issue. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006). Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and bears the burden of proving such defense accordingly. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citing *Miller v Boston Ins. Co.*, 218 A.2d 275, 277 (1966)). It is only when the existence of facts constituting an affirmative defense is admitted by the plaintiff, or is established by uncontradicted testimony in the plaintiff's case, that such burden is removed from the defendant. *Armon v. Aetna Cas. & Sur. Co.*, 87 A.2d 302, 304 (Pa. 1952).

Paragraph A of the policy's L205 Endorsement states that Nautilus will not provide coverage for "bodily injury" to "volunteer workers" of any insured "arising out of" the direct or indirect actions related to the insured's business. (ECF No. 7-1, p. 14). The L205 Endorsement Paragraph A's exact language is as follows:

> This insurance does not apply to:
> **e. Injury to Employees, Contractors, Volunteers and Other Workers**
> "Bodily Injury" to:
> (1) "Employees," "leased workers," "temporary workers," "volunteer workers," statutory "employees," casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or
> (2) Any insured's contractors', subcontractors', or independent contractors' "employees," "leased workers," "temporary workers," "volunteer workers," statutory "employees," casual workers, seasonal workers, contractors, subcontractors, or independent contractors
> arising out of and in the course of:
> (a) Employment by any insured; or
> (b) Directly or indirectly performing duties related to the conduct of any insured's business; or

>                              \*\*\*
> This exclusion applies:
> (1) Regardless of where the:
>     (a) Services are performed; or
>     (b) "Bodily injury" occurs; and
> (2) Whether any insured may be liable as an employer or in any other capacity; and
> (3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

(ECF No. 7-4, p. 40) (emphasis in original).

Other district courts within this circuit have interpreted this very Nautilus policy exclusion, the L205 Endorsement, and found it to be clear and unambiguous, and the Court agrees with their assessment. *Nautilus Ins. Co. v. Refresh Home Improvement, LLC*, 2022 WL 17708251, at \*4 (D.N.J Dec. 14, 2022) ("The parties do not assert that [the L205 Endorsement] is ambiguous, nor does the Court find any ambiguity. As a result, the Court will construe the policy terms according to their plain meaning," applying New Jersey law). Further, Section V of the policy defines a "volunteer worker" as "a person who is not your 'employee,' and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you." (ECF No. 7-4, p. 30). As Nautilus aptly raised in its brief in support of its motion to dismiss, another court within the Third Circuit has previously held that:

> Given the context in which the term "volunteer worker" is used in the Nautilus Policy – as one of the types of workers, in addition to employees, for whom the Policy does not provide coverage for bodily injury claims – the definition of a volunteer worker as a person who is not an employee of the insured, but who "donates his or her work and acts at the direction of and within the scope of duties determined by [the insured]," can reasonably be understood to refer to a person who, while not an employee, stands in the shoes of an employee or otherwise has an employment-like relationship, albeit unpaid, with the insured.

*Nautilus Ins. Co. v. Bike & Build, Inc.*, 340 F. Supp. 3d 399, 419 (E.D. Pa. 2018).

Stover attempts to argue that his complaint never admits that he was a volunteer worker, a temporary worker, an employee, or that any exclusion of the policy gave Nautilus the grounds to deny coverage to Rexrode in the underlying action. (ECF No. 10, p. 4). However, Stover concedes, in his opposition to Nautilus' motion to dismiss, that "Mr. Stover was not hired, employed, nor compensated in any manner at any time for his assistance in the tree removal project." (*Id.* at 5) (citing ECF No. 10-1, ¶ 8). As Nautilus righty argues, this admission squarely places Stover within the definition of a "volunteer worker" and the tree removal project within the scope of Rexrode's business for purposes of applying the L205 Endorsement. Considering Stover's allegations, it is beyond dispute from the face of the Underlying Complaint that Stover performed a task that otherwise would have been performed by one of Rexrode's employees by assisting Defendants in cutting a tree at the apartment complex. Stover clearly engaged in activity related to Rexrode's business, and he can be classified as a "volunteer" because individuals who choose to perform a job or service, without pay, choose to "volunteer" their time and service.

Additionally, as Nautilus notes, Stover did nothing to refute its contention that the interpretation of the L205 Endorsement is controlling for purposes of the coverage dispute at issue. (ECF No. 11, p. 10). Stover has failed to plead any facts supporting his contention that he is not a "volunteer worker" within the meaning of the L205 Endorsement. (*Id.* at 11). The only refutation he offers is that his Underlying Complaint makes no explicit assertion or admission that he acted as a "volunteer." (ECF No. 10, p. 5). These factual gaps, combined with the clear lack of legal support for his position, showcase the weakness of Stover's position.

The Court holds that the L205 Endorsement precludes coverage as to Stover, and that he has failed to state a claim upon which relief can be granted.

### B. Count II will be dismissed because Nautilus has no duty to defend or indemnify Rexrode.

Count II asserts a claim for breach of contract, arguing that Nautilus breached its contractual obligations by disclaiming coverage for the Underlying Action. Specifically, Count II claims that Nautilus breached its contractual obligations to Rexrode by failing to provide coverage under the policy, disclaiming coverage under the policy, and/or refusing to defend Rexrode from liability under the policy. (ECF No. 1-4, ¶ 26).

Three elements are necessary to state a claim for a breach of contract under Pennsylvania law: (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (alteration to quote) (citation omitted). "The paramount goal of contract interpretation is to determine the intent of the parties." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011) (citations and internal quotation marks omitted). At the motion to dismiss stage, the Court may resolve claims involving contract interpretation if the unambiguous terms of the contract at issue bar the relief sought. *Jaskey Fin. & Leasing v. Display Data Corp.*, 564 F. Supp. 160, 163 (E.D. Pa. 1983) ("[T]he claim may be resolved in a motion to dismiss, if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court.") (citations omitted). "[A] contract is unambiguous if it is reasonably capable of only one construction." *Tamarind Resort Assocs. v. Gov't of the Virgin Islands*, 138 F.3d 107, 110-11 (3d Cir. 1998).

In determining whether an insurer has a duty to defend, a court must first determine the scope of coverage provided under the policy in question, and then examine the allegations of the underlying complaint asserted against the insured to ascertain whether those factual allegations

9

fall within the coverage that is provided under the applicable policy. *Graziano Const. & Dev. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 2011 WL 2409883, at *4-5 (Pa. Super. May 26, 2011). Where the allegations within the underlying complaint do not encompass an injury that comes within the scope of coverage provided under the policy at issue, the insurer does not have a duty to defend. *Nationwide Mut. Fire Ins. Co. v. Malofiy*, 2011 WL 1050050, at *5-6 (E.D. Pa. 2011). The duty to defend is also broader than the duty to indemnify, and the Pennsylvania Superior Court has held that because the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify. *Kvaerner*, 908 A.2d at n. 7 (*see also Scopel v. Donegal Mut. Ins. Co.*, 689 A.2d 602, 605 (Pa. Super. 1997)).

Consistent with the analysis concerning Count I, the Court holds that because the Coverage Complaint allegations do not encompass an injury that comes within the scope of the L205 Endorsement, Nautilus does not have a duty to defend its insured, Rexrode. Since Nautilus has no duty to defend, the Court also finds that it has no duty to indemnify Rexrode for the claims and damages alleged against him. Because no duty exists, Stover's breach of contract claim fails as a matter of law.

### IV.   CONCLUSION

For the foregoing reasons, the Court will grant Nautilus' motion to dismiss. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

7/7/25
Dated